IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 11-582 |
| MICHAEL PATTERSON | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

When Michael Patterson illegally attempted to purchase oxycodone and fentanyl from a government cooperator at the Boeing Company's Ridley Park, PA plant, he was an inspector of the V-22 Osprey helicopter, an aircraft actively used in U.S. and other military operations around the world. The year prior to that, he was the President of the UAW Union, the highest position of the union whose membership consisted of Boeing employees involved in the manufacturing process at the plant and whose agreement was necessary in the setting of employment policies governing the union's membership.[1] Despite these two important positions -- the highest ranking union official and a quality insurance guarantor – Patterson illegally bought and used oxycodone and fentanyl, two extremely powerful opioids, at the Boeing plant for at least two years, including the year he was the union president. An attempt to take fentanyl at the plant while operating a plant vehicle was captured on tape during the undercover operation. He also was caught on tape trying to broker the sale of cocaine. All of this happened after he had received the benefits of a diversion program for illegal use of marijuana.

---

[1] In fact, as testimony before the Court revealed, the Union's consent was necessary to allow Boeing to change its Drug Free Workplace drug testing program to include testing for prescription medications.

1

Patterson's abuse of his responsibilities as a Boeing worker and union official contributed not only to the widespread acceptability of an illegal drug culture at Boeing, but in the government's view, significantly increased the likelihood of danger to the military end users of the aircraft manufactured at Boeing. For these reasons, as well as for the reasons provided below, the government recommends a sentence at the high end of the advisory sentencing guidelines, that is, a sentence of six months imprisonment.

I.  **BACKGROUND**

On March 15, 2011, the defendant pled guilty to Counts One through Three of the information charging him with attempted possession of oxycodone and fentanyl, in violation of Title 21, United States Code, Section 846. The charges stem from his attempts on September 9, 23 and 26, 2011, to illegally purchase oxycodone pills and fentanyl lollipops from an individual cooperating with the government inside of Building 3-06 at the Boeing plant.

II.  **SENTENCING CALCULATION**

  A.  **Statutory Maximum Sentence**

According to the Probation Office, the Court may impose a sentence of three years imprisonment, a year of supervised release, a $300,000 fine, and a $300 special assessment.[2]

---

[2]  The potential fine of $100,000 per count of conviction is different from the fine that the parties understood could be imposed at the time of the defendant's change of plea hearing – it was the parties understanding that the maximum fine that could be imposed was $1,000 per count of conviction.

B.   **Sentencing Guidelines Calculation**

   The Probation Office correctly calculated the defendant's advisory guideline range as follows:

   | | |
   |---|---|
   | Base offense level based on attempted possession of controlled substances, 21 U.S.C. § 844, under U.S.S.G. § 2D2.1: | 8 |
   | Adjustment for acceptance of responsibility, under USSG § 3E1.1(a) | - 2 |
   | **TOTAL OFFENSE LEVEL** | **6** |

   The defendant has a Criminal History Category of **I**. PSR ¶ 32. Accordingly, with a total offense level of 6 and a criminal history category of I, his guidelines range is **zero to six months imprisonment**.

**III.   DISCUSSION OF THE SENTENCING FACTORS**

   Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[3] In this case, the government believes that a sentence at the high end of the sentencing guideline range is warranted.

## A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The government argued at length about the nature and circumstances of the offense (both generally as it relates to the illegal consumption of prescription substances and specifically as it relates to the defendant's employment) and the history and characteristics of this particular defendant in its written, testimonial and evidentiary presentations to the Court in opposition to the defendant's motion for Section 3607 relief. Those submissions are therefore incorporated herein.

## B. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

The sentence imposed in this case must fairly punish the defendant for his criminal conduct, and reflect the seriousness of the offense. Of the Boeing defendants charged with misdemeanors, this defendant is unique in certain respects

---

[3] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the 'not greater than necessary' language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

4

that warrant a sentence at the high end of the advisory sentencing guideline range. He was an inspector at the Boeing plant – a guarantor of the quality of the important military equipment he helped manufacture. He was also the highest-ranking official of the union whose membership was made up of the other Boeing employees who made the V-22 Osprey and Chinook helicopters. And he had been in diversion before, so he should have been personally aware of the benefits of the free, confidential, drug counseling and treatment services available to him at Boeing. Despite this, he chose to purchase and use serious and potentially deadly opioids and, as if that was not enough, also tried to sell cocaine, while at work. The government respectfully submits that to sentence this defendant at the low or even middle end of the guidelines would not reflect the seriousness of his offenses, would undercut respect for the law by those with whom he worked, and would not provide a just punishment for his offenses.

### C. The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

When passing the Sentencing Reform Act, Congress explained:

> [It is our] view that in the past there have been many cases, particularly in instances of major white collar crime, in which probation has been granted because the offender required little or nothing in the way of institutionalized rehabilitative measures . . . and because society required no insulation from the offender, without due consideration being given to the fact that the heightened deterrent effect of incarceration and the readily perceivable receipt of just punishment accorded by incarceration were of critical importance. The placing on probation of [a criminal] may be perfectly appropriate in cases in which, under all the circumstances, only the rehabilitative needs of the offender are pertinent; such a sentence may be grossly

5

> inappropriate, however, in cases in which the circumstances mandate the sentence's carrying substantial deterrent or punitive impact.

S. Rep. No. 98-225, at 91-92 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3274-75.

Prescription drug abuse, as discussed in the government's prior submissions, is a "significant threat" in the United States.[4] The investigation here took a large amount of government resources and, because of the nature of the plant under investigation and the closed culture of its employees, took many years. Accordingly, a sentence within the guidelines is necessary to afford both specific and general deterrence to criminal conduct. The recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. The general deterrent effect of a prison sentence is an appropriate consideration in choosing a reasonable sentence. As the courts of appeals have held both before and after Booker, deterrence under Section 3553(a) is not limited to deterrence of the particular defendant. See, e.g., United States v. Eura, 440 F.3d 625, 638 (4th Cir. 2006) (concurring opinion) (referring to the court's consideration of "the general deterrence factor, § 3553(a)(2)(B)"); United States v. Jordan, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); United States v. Glover, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre-Booker and post-Booker, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation" (internal quotation marks

---
[4] National Drug Intelligence Center, National Drug Threat Assessment 2005, U.S. Department of Justice, Document ID: 2005-Q0317-003, February 2005 at 99.

omitted)); see also United States v. Yeaman, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation"). A sentence at the high end of the sentencing guidelines would help accomplish this goal.

### D. The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

There is no need in this case to adjust the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . ." Section 3553(a)(2)(D).

### E. The Guidelines and Policy Statements Issued by the Sentencing Commission

As stated earlier, the Guidelines retain their significant importance in advising judges about appropriate sentences. Uniformity in sentencing should be a paramount goal; in order to rid the criminal justice system of unpredictability and possible bias, like offenders should receive like sentences, to the extent possible. The only vehicle for achieving such a goal is through the application of the Sentencing Guidelines. Here, the defendant abused his position of leadership and put the lives of the men and women serving the United States and other militaries around the world at risk. His conduct warrants a guideline sentence and, the government submits, a sentence at the high end of the guidelines.

### F. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

A guidelines sentence is necessary when considering the importance of avoiding unwarranted sentencing disparities, another factor that is set forth in Section 3553(a). As an initial matter, this Section 3553(a) factor is not primarily concerned with sentencing disparities in a particular case; it is designed to ensure sentencing consistency among similarly situated defendants across the entire nation. See United States v. Parker, 462 F.3d 273 (3d Cir. 2006); United States v. Carson, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between co-defendants.'").

### G. The Need to Provide Restitution to Any Victims of the Offense

Restitution is not an issue in this case.

## IV. CONCLUSION

For all of the reasons stated above, the government respectfully recommends a sentence at the high end of the sentencing guidelines range of zero to six months imprisonment. This sentence is necessary to address the serious nature of the offense, and to fairly punish the defendant who abdicated his role as a leader of others and quality control guarantor of sensitive and important military equipment.

                                  Respectfully submitted,

                                  ZANE DAVID MEMEGER
                                  United States Attorney

                                  _____/s/_____
                                  FAITHE MOORE TAYLOR
                                  ASHLEY K. LUNKENHEIMER
                                  Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I certify that a copy of the GOVERNMENT'S SENTENCING MEMORANDUM has been filed electronically on the Electronic Case Filing system and is available for viewing and downloading from the ECF system, and/or was served by electronic mail on the following defense counsel:

                Thomas Dreyer, Esq.
              Counsel for Michael Patterson

                                  _____/s/_____
                                  Ashley K. Lunkenheimer
                                  Assistant U.S. Attorney

Date: August 2, 2012