```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                          - - -

UNITED STATES OF AMERICA      :  CRIMINAL ACTION NO. 11-582-1
                              :
            v.                :  Philadelphia, Pennsylvania
                              :  March 15, 2012
MICHAEL PATTERSON,            :  3:09 o'clock p.m.
         Defendant            :
. . . . . . . . . . . . . . . :

                       HEARING
          BEFORE THE HONORABLE TIMOTHY R. RICE
             UNITED STATES MAGISTRATE JUDGE


                          - - -


APPEARANCES:

For the Government:       ASHLEY LUNKENHEIMER, ESQUIRE
                          615 Chestnut Street
                          Suite 1250
                          Philadelphia, PA  19106


For the Defendant:        THOMAS A. DRYER, ESQUIRE
                          6 Dickinson Drive
                          Building #100, Suite 106
                          Chadds Ford, PA  19317

Also Present:             Charles Meissler
                          Pre-Trial Services

                          - - -

Audio Operator/ESR:       Christina Franzese

Transcribed by:           Paula L. Curran, CET

        (Proceeding recorded by The Record Player digital
sound recording; transcript produced by AAERT-certified
transcriber.)


                  Laws Transcription Service
                    48 W. LaCrosse Avenue
                     Lansdowne, PA 19050
                       (610)623-4178
```

1          (The following occurred in open court at 3:09

2     o'clock p.m.)

3          MR. DREYER:  Good afternoon, your Honor.

4          THE COURT:  Good afternoon, Mr. Dreyer and Mr.

5     Patterson, how are you today?

6          THE DEFENDANT:  Good, sir.

7          THE COURT:  You may be seated.  It's my

8     understanding that we're here for a guilty plea, is that

9     correct?

10         MR. DREYER:  Yes, your Honor.

11         THE COURT:  All right, let me just do this, ask a

12    few questions of your client before we get started.

13         Mr. Patterson, do you understand that I'm a

14    Magistrate Judge and you have a right to have your case heard

15    by a District Court Judge?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Do you know the difference?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Okay, so you're agreeable to having me

20    handle your case?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Okay, you don't have to do that if you

23    don't want to.

24         THE DEFENDANT:  Yes, I know, mm-hmm.

25         THE COURT:  Okay, all right, very well.  Christine,

1  could you swear Mr. Patterson, please.

2          COURT CLERK:  Please state your full name for the

3  record.

4          THE DEFENDANT:  Michael Patterson.

5          THE DEPUTY CLERK:  Please spell your last name.

6          THE DEFENDANT:  P-A-T-T-E-R-S-O-N.

7          MICHAEL PATTERSON, Defendant, Sworn.

8          THE COURT:  Okay, you can be seated, sir.  Sir, I'm

9  going to ask you some questions and you're under oath, so you

10 understand that if you answer any questions falsely, that

11 your answer can later be used against you in a prosecution

12 for perjury or making a false statement?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  All right.  If I say anything that you

15 don't understand or you want me to re-explain to you or you

16 want to speak to Mr. Dreyer, just tell me and I'll allow you

17 to do that, all right?  And you can talk to Mr. Dreyer, at

18 any time, about any of the questions I ask you, if you want.

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Okay.  Could you state your full name,

21 please?

22         THE DEFENDANT:  Michael Patterson.

23         THE COURT:  Okay and how old are you, sir?

24         THE DEFENDANT:  I'm 54.

25         THE COURT:  All right and the reason I'm asking you

4

1    these questions is I have to determine that you're entering

2    into this plea knowing and voluntary and that you're aware of

3    going on here today.

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  So I know some of these may seem obvious

6    and I apologize.

7              THE DEFENDANT:  No, that's okay.

8              THE COURT:  Okay.  Can you read and write and --

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  -- I know you can speak English?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  All right and how far did you go in

13   school?

14             THE DEFENDANT:  Pardon?

15             THE COURT:  How far did you go in school?

16             THE DEFENDANT:  Graduated 12th grade.

17             THE COURT:  12th grade, okay, excellent.  Have you

18   ever had or been treated for a drug or alcohol addiction or

19   mental disease, mental illness?

20             THE DEFENDANT:  I recently completed intensive

21   out-patient therapy.

22             THE COURT:  Okay and when did you complete that?

23             THE DEFENDANT:  My last session was yesterday.

24             THE COURT:  Okay.

25             THE DEFENDANT:  Yes.

5

1          THE COURT:  And that's going well?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay, have you had any alcohol or drugs

4    either today or yesterday?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  All right, when was the last time you

7    had any alcohol or drugs?

8          THE DEFENDANT:  I would say the last time I had

9    alcohol was probably -- I couldn't tell you exact, I would

10   say about four months ago.

11         THE COURT:  Okay.

12         THE DEFENDANT:  Four or five months ago.

13         THE COURT:  And how about narcotics?

14         THE DEFENDANT:  None, none at all.  Only blood

15   pressure medicine, Crestor, things that are prescribed by my

16   doctor.

17         THE COURT:  Okay, are you feeling fine today,

18   though?

19         THE DEFENDANT:  Oh, yes, sir.

20         THE COURT:  Okay, very good and can you hear and

21   understand me all right?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  All right.  Now, has Mr. Dreyer gone

24   over the charges against you and fully explained your trial

25   rights and the defenses you could bring to those charges?

6

1              THE DEFENDANT:  Yes, he has.

2              THE COURT:  All right and I noticed that you've

3    agreed to a plea agreement with the Government.  Now, the

4    copy I have doesn't have Mr. Patterson's signature on it.  Do

5    you have a signed copy?

6              MR. DREYER:  I have the original here, your Honor.

7              THE COURT:  Okay, could you just verify for me, Mr.

8    Patterson, that you signed the original?

9              THE DEFENDANT:  Yeah, yes, I did, sir.

10              THE COURT:  Okay.  We can file that after court, you

11    can keep it, Mr. Dreyer, for now.  Did Mr. Dreyer fully

12    explain to you the written plea agreement?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  Did he go over all the terms with you?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  Okay, do you feel as though you've had

17    enough time to talk this over with him?

18              THE DEFENDANT:  I believe so, yes, sir.

19              THE COURT:  All right, has Mr. Dreyer done

20    everything for you that you wanted?

21              THE DEFENDANT:  Yes, he has, your Honor.

22              THE COURT:  All right.  Now, Ms. Lunkenheimer, could

23    you summarize the terms of the plea agreement that you've

24    entered into with Mr. Patterson?

25              MS. LUNKENHEIMER:  Yes, your Honor.  As the Court, I

1    think, has indicated, the defendant is pleading guilty to the

2    three charges in the information.  Those charges are

3    violations of Title 21, United States Code, Section 846,

4    which is attempted possession of Oxycodone and Fentanyl.  And

5    the plea agreement requires that he plead guilty to those

6    charges, that he pay a special assessment of $300 at the time

7    of sentencing.  There are certain provisions in the plea

8    agreement that I would like to specifically point out.  If

9    the Court would like me to do that now, I don't know your

10   procedure if you go through the maximums --

11           THE COURT:  My procedure is your procedure.

12           MS. LUNKENHEIMER:  Okay, then I will start with the

13   maximums for each of the counts --

14           THE COURT:  Fine.

15           MS. LUNKENHEIMER:  -- which are the same and then I

16   will go through the total maximum sentence that the defendant

17   faces, which is clearly laid out in the plea agreement.

18           The defendant should understand that each of the

19   counts with which he is charged carries a maximum of one year

20   in prison, maximum of one year of supervised release, a

21   $1,000 fine and a $100 special assessment.  That is true

22   whether or not he were to be convicted of possessing

23   Oxycodone or Fentanyl or both.

24           And so the total maximum sentence he faces is a

25   maximum of three-years imprisonment, a maximum of one year

1  supervised release, a $3,000 fine and a $300 special

2  assessment.

3          The defendant also needs to understand and the plea

4  agreement makes clear that if supervised release is imposed

5  on him and he were to violate that, he could spend additional

6  time in prison for that violation.

7          We have certain -- there's a new provision in our

8  plea agreement related to financial statements and we are

9  asking that the defendant complete and submit to the U.S.

10  Attorney's Office information about his finances.  Those are

11  helpful to determining any restitution and forfeiture or

12  other things.  There is no forfeiture charged in this case,

13  but restitution and the appropriate fine.

14          We have come to certain stipulations and the plea

15  agreement expressly provides that those stipulations are --

16  we all recognize are not binding either on the probation

17  department or on the Court.  But I do want to list them for

18  the Court today.

19          The first stipulation is that the parties agree and

20  stipulate that for the offenses of conviction charged in the

21  information, the defendant attempted to possess 13 Oxycontin

22  40 milligram tablets and one Oxycontin 80 milligram tablet,

23  each of which is a mixture and substance containing a

24  detectable amount of Oxycodone and nine Actiq 1200 micrograms

25  lollipops, each of which is a mixture and substance

1    containing a detectable amount of Fentanyl.

2           The parties have also agreed and stipulated that the

3    defendant has demonstrated acceptance of responsibility for

4    this offense, making him eligible for a two-level downward

5    adjustment under the sentencing guidelines.

6           The third point is not applicable here because by

7    any calculation of the initial base offense level, it does

8    not appear that he's going to reach a Level 16 and he would

9    have to do so in order to have a third point for acceptance

10   to be eligible.

11          THE COURT:  Now, why is the -- just the drug amounts

12   in there, do you have a dispute over the offense level?

13          MS. LUNKENHEIMER:  No, your Honor, they're in there.

14   That's the way we've been working on these.  It's just to

15   acknowledge what he did.  That way, there's no issue at

16   sentencing if we summarize that it was both Actiq and

17   Oxycodone.  There's not actually a purpose, as you're

18   correct.  I think what you're implying, which we all are

19   aware, is that the guidelines actually prescribe a specific

20   based offense level for simple possession.

21          THE COURT:  Okay.

22          MS. LUNKENHEIMER:  And so that is not adjusted by

23   those amounts.

24          THE COURT:  Okay.

25          MS. LUNKENHEIMER:  And we are aware of that.

1          THE COURT:  Okay.

2          MS. LUNKENHEIMER:  Would you like me to review the

3    appellate waiver then?

4          THE COURT:  Sure.

5          MS. LUNKENHEIMER:  There is an appellate waiver in

6    this plea agreement and for the most part, the defendant

7    needs to understand and I'm sure his counsel has explained to

8    him that he has basically severely limited his ability to

9    both directly appeal and collaterally appeal his conviction

10   or sentence or any other matter related to this prosecution.

11   There are exceptions to that, as there are to any rule, if

12   the Government were to file an appeal, the defendant then can

13   appeal.  The defendant can also appeal even if the Government

14   does not file an appeal, if any sentence on any count of

15   conviction exceeds the statutory maximum for that count,

16   which I have just described, the sentencing judge erroneously

17   departs upward pursuant to the sentencing guidelines or the

18   sentencing judge, exercising the Court's discretion pursuant

19   to the case, United States v. Booker, imposes an unreasonable

20   sentence.

21          If the defendant does appeal pursuant to this plea

22   agreement, he cannot add any other issues and that he has to

23   strictly limit those to those issues.

24          I believe that Mr. Dreyer is retained, so if there

25   is a Hyde amendment attorney's fees waiver in this case.

1    There is a FOIA waiver in this plea agreement and most

2    important in a way to all of us, is that I would like to read

3    specifically, if the Court would indulge me, the last

4    paragraph of the plea agreement.

5         And that is "that it is agreed that the parties'

6    guilty plea agreement contains no additional promises,

7    agreements or understandings other than those set forth in

8    this written plea agreement and that no additional promises,

9    agreements or understandings will be entered into unless in

10   writing and signed by all of the parties."  And I say that in

11   order to indicate that this is it, what I've read and

12   summarized here and what is contained in this agreement, is

13   the only agreement we have with this defendant.

14        THE COURT:  Mr. Patterson, is that your

15   understanding of the terms of the plea agreement?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  All right, thank you.  Mr. Dreyer, any

18   other terms that Ms. Lunkenheimer omitted?

19        MR. DREYER:  No, your Honor.

20        THE COURT:  Okay, thank you.  Other than these

21   terms, Mr. Patterson, did anyone promise or offer you

22   anything else to get you to plead guilty?

23        THE DEFENDANT:  No, sir.

24        THE COURT:  All right, do you understand that no one

25   can guarantee you what sentence you will receive from me?

12

1           THE DEFENDANT:  I understand.

2           THE COURT:  All right, did anyone use force,

3    violence or threats to get you to plead guilty?

4           THE DEFENDANT:  No, sir.

5           THE COURT:  Are you pleading guilty because of your

6    own free will?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  All right.  You're a United States

9    citizen, I take it, correct?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  And you understand that the

12   offense is covered by the sentencing guidelines and I'm

13   required to consider those guidelines in sentencing you, but

14   that I may depart either upward or downward under certain

15   circumstances?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right and that a probation officer

18   is going to prepare a pre-sentence report which will set

19   forth your, what's called sentencing guideline range and that

20   will result in a range of potential imprisonment possibly.

21   And if you disagree with that report, the guilty plea that

22   you entered today is still going to be binding on you?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  All right, now you can contest and

25   object to the report that the officer submits, if necessary

1 and the Government can do so.  But my rulings on that would

2 be binding and will affect what the sentence would be.

3 Do you understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Okay.  And you understand that the drug

6 amounts and the type of drugs involved can have a significant

7 effect on the sentencing guideline level?  Do you understand

8 that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And there are circumstances -- is there

11 any circumstances where he could be held accountable for the

12 drug amounts of other people?

13          MS. LUNKENHEIMER:  No, your Honor, he is not charged

14 as being in a conspiracy.

15          THE COURT:  Okay, okay.  Do you understand that your

16 attorney and the Government can agree on facts and make

17 recommendations, motions or requests at sentencing, but that

18 I don't have to do what they jointly agree should be done?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  All right.  And if I disagree with what

21 your lawyer and the Government want to happen, your plea is

22 still binding on you, even if I disagree with their facts,

23 recommendations or motions?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Okay.  Do you understand that there's no

1  more parole and you must serve the whole time of imprisonment

2  that you're sentenced to, if you are sentenced to prison?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  All right.  Do you understand that your

5  appeal rights are limited by the plea agreement?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  And you can only appeal under the

8  circumstances outlined by Ms. Lunkenheimer, otherwise, you

9  waive your appellate rights?

10        THE DEFENDANT:  Yes, I understand.

11        THE COURT:  All right.  Now, did you sign the

12  acknowledgement of rights form that was attached to the plea

13  agreement?

14        MR. DREYER:  Yes, he did, your Honor.

15        THE COURT:  All right, could you just verify for me

16  that that's your signature on there, Mr. Patterson?

17        THE DEFENDANT:  Yes, your Honor.

18        THE COURT:  All right, let me just summarize a few

19  of those rights that you've acknowledged and that you're

20  waiving.  That you're presumed innocent until you are proven

21  guilty by the Government beyond a reasonable doubt.  You're

22  waiving that presumption by pleading guilty.

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  Do you understand that you have a right

25  to the assistance of a lawyer at every stage of the

1  proceeding, including trial, during trial and after trial and

2  in any appeal?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  By pleading guilty, you're waiving that

5  because you're not going to be going to trial?

6          THE DEFENDANT:  I understand.

7          THE COURT:  All right.  Do you understand you have a

8  right to plead not guilty and persist in that plea and have

9  your case tried by a jury?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  You are giving that right up?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  You have a right to a jury of your peers

14  drawn from the residents of this district and that you would

15  get help from Mr. Dreyer in selecting a jury?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  Do you understand that in

18  order to find you guilty, a jury verdict would have to be

19  unanimous, that is, all 12 jurors would have to agree that

20  the Government has proven you guilty beyond a reasonable

21  doubt?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you understand that you could

24  subpoena or court order witnesses to come to court to testify

25  in your behalf?

 1              THE DEFENDANT:  Yes, sir.

 2              THE COURT:  And you're giving up that right?

 3              THE DEFENDANT:  Yes, sir.

 4              THE COURT:  And do you also understand that if you

 5     were found guilty, you would have full appellate rights,

 6     unlike the limited rights that you have with a guilty plea

 7     and you could appeal the jury's verdict and any rulings I

 8     make, to a higher court and you're giving up that right?

 9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  Okay.  Do you understand that at trial

11     you have the right to face or confront your witnesses and

12     have Mr. Dreyer cross-examine them.  That is, to challenge

13     their testimony about what the Government alleges happened in

14     this case and you would be able to see them face to face in a

15     courtroom and by pleading guilty, you're giving up that

16     right?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  All right.  Do you understand also, at

19     trial, that you would not be forced to take the stand or

20     testify?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  All right and by not going to trial,

23     you're giving up that right.  And you understand that by

24     entering this plea, there will be no trial and you're giving

25     up all these rights, including all those listed on the

17

1    acknowledgement of rights form that I just told you about?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  All right, now, in order to prove you

4    guilty in this case, the Government would have to prove the

5    following elements beyond a reasonable doubt.  Let me just go

6    over those with you.

7            The Government would have to prove that you intended

8    to commit the crime of illegally possessing a controlled

9    substance.  In this case, a mixture or substance containing a

10   detectable amount of Oxycodone and Fentanyl and that

11   thereafter, you did an act constituting a substantial step

12   toward the commissions of that crime, which strongly

13   corroborates your criminal intent.  That's what the

14   Government would have to prove.

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  All right.  Now, Ms. Lunkenheimer, could

17   you summarize the facts that you would introduce to prove Mr.

18   Patterson's guilt?

19           MS. LUNKENHEIMER:  Yes, if this case were to proceed

20   to trial, the Government would introduce evidence through

21   witnesses and other documents, which would establish the

22   following.  That on September 9, 2011, the defendant met with

23   an individual cooperating with the Government, inside a

24   building on the Boeing Company's Ridley Park, Pennsylvania

25   campus and they went into a back room.  There, the defendant

1  bought five placebo Oxycontin 40 milligram tablets and three

2  placebo Actiq 1200 microgram lollipops from the cooperating

3  individual for $160.  That is Count 1.

4          As to Count 2, on September 23, 2011, the defendant

5  again met with the cooperator, again inside of a building on

6  the Boeing campus and the defendant bought five placebo

7  Oxycontin 40 milligram tablets and again three placebo Actiq

8  1200 microgram lollipops for $160.

9          And on September 26, 2011, the defendant, a third

10 time met with the cooperating individual inside of a building

11 on the Boeing campus and there, the defendant bought three 40

12 milligram Oxycontin and one 80 milligram Oxycontin tablet and

13 three Actiq 1200 microgram lollipops from the cooperating

14 individual for $160.

15         THE COURT:  All right, Mr. Patterson, did you hear

16 Ms. Lunkenheimer's summary of the facts?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Is that what happened?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Did you do what she said you did?

21         THE DEFENDANT:  Yes, I did.

22         THE COURT:  All right.  So would you now like to

23 change your plea to guilty?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  All right, would you please stand and

1    we'll have the clerk take your plea.

2            COURT CLERK:  Michael Patterson, you have been

3    charged in Criminal Indictment Number 11-582, in violation of

4    21, USC, Section 846, attempted possession of Oxycodone and

5    Fentanyl.  How do you plead, guilty or not guilty?

6            THE DEFENDANT:  I plead guilty.

7            THE COURT:  All three counts?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Okay, thank you.  You can be seated,

10   sir.

11           THE DEFENDANT:  Thank you.

12           THE COURT:  Now, I know you've been charged by

13   information, sir.  Do you understand that -- does he have a

14   right to a Grand Jury indictment?

15           MS. LUNKENHEIMER:  Your Honor, he does not.

16           THE COURT:  Okay, so I don't have to go over that.

17   All right, I find that Mr. Patterson is fully alert and

18   competent and capable of entering an informed plea.  That the

19   plea is knowingly and voluntarily made and supported by an

20   independent basis in fact containing each of the essential

21   elements of the offenses that he's pled guilty to.

22   Therefore, I accept Mr. Patterson's guilty plea and he is now

23   adjudged guilty of all three counts in the information.

24           Is there anything I missed, Ms. Lunkenheimer?

25           MS. LUNKENHEIMER:  No, your Honor.

1           THE COURT:  Mr. Dreyer?

2           MR. DREYER:  No, your Honor.

3           THE COURT:  All right, I'm going to -- I have the

4    probation officer here.  I'm going to order a pre-sentence

5    report.  Sentencing, do you have conflicts with sentencing?

6    I was going to do it in approximately three months, unless

7    somebody has a conflict.

8           MS. LUNKENHEIMER:  I do not.

9           MR. DREYER:  No, your Honor.

10          THE COURT:  How is Monday, June 18th?

11          MS. LUNKENHEIMER:  That should be fine for the

12   Government.

13          MR. DREYER:  Fine, your Honor.

14          THE COURT:  Mr. Dreyer?

15          MR. DREYER:  Fine, your Honor.

16          THE COURT:  9:30.

17          MR. DREYER:  Terrific.

18          THE COURT:  Or I can do it at any time if you

19   prefer.

20          MR. DREYER:  9:30 is fine.

21          THE COURT:  Does that work for you, Mr. Patterson?

22          THE DEFENDANT:  Oh, absolutely.

23          THE COURT:  Okay.  All right, so we'll set

24   sentencing for June 18th at 9:30 a.m.

25          Mr. White, I believe?

1          MR. WHITE:  Yes, your Honor.

2          THE COURT:  Are you going to be doing the

3     pre-sentence report?

4          MR. WHITE:  Yes, your Honor.

5          THE COURT:  Okay, so, Mr. Patterson, you and Mr.

6     Dreyer will have to sit down with the probation officer and

7     give him some information and that will help me get a better

8     picture of your life and you know, what you're like as a

9     person, aside from this incident.  And that will assist me in

10    formulating what the appropriate sentence will be.  So I urge

11    you to cooperate with the probation officer.

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  All right, anything else we have to do?

14         MS. LUNKENHEIMER:  Your Honor, only that the

15    Government is not asking for any change in the defendant's

16    bail conditions.

17         THE COURT:  Excellent.

18         I have received a report from Mr. Meissler and he

19    advised me that after a few problems at the beginning, with

20    marijuana use, you've been in treatment, you'll been fully

21    compliant and they're very pleased with your performance.

22         THE DEFENDANT:  Right, the --

23         THE COURT:  Is that right?

24         THE DEFENDANT:  Yes, sir.

25         MR. DREYER:  Yes, your Honor, no problems.

22

1           THE COURT:  Is that right?

2           MR. MEISSLER:  The report is from Officer Reyes,

3    actually, not myself.

4           THE COURT:  Pardon me?

5           MR. MEISSLER:  The report is from Officer Reyes.

6           THE COURT:  Officer Reyes, that's right, that's

7    right.

8           MR. DREYER:  Your Honor, may I approach and hand up

9    the original document?

10           THE COURT:  Yes, sure, Mr. Dreyer, thank you.

11           MR. DREYER:  Thank you.

12           THE COURT:  Anything else, Mr. Dreyer?

13           MR. DREYER:  No, your Honor.

14           THE COURT:  All right, sir, you're going to remain

15    on bail and I'll see you in June after the pre-sentence

16    report is prepared.

17           MS. LUNKENHEIMER:  Thank you, your Honor.

18           THE COURT:  Ms. Lunkenheimer, thank you.

19           Thank you, Mr. Dreyer for --

20           MR. DREYER:  Thank you, your Honor.  Good afternoon,

21    sir.

22           THE COURT:  Have a good day, sir.

23           (Proceeding adjourned 3:29 o'clock p.m.)

24                                    * * *

<u>CERTIFICATION</u>

I hereby certify that the foregoing is a correct

transcript from the electronic sound recording of the

proceedings in the above-entitled matter.



s:/Geraldine C. Laws, CET          Dated 9/19/12
Laws Transcription Service